## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **THE LOUISIANA FORESTRY ASSOCIATION, INC. et al.** | ) ) ) | **Case No. 1:11-cv-01623** |
| **Plaintiffs,** | ) ) | **Judge:  DRELL** |
| **v.** | ) ) ) | **Magistrate:  KIRK** |
| **HILDA L.  SOLIS, et al.,** | ) ) | |
| **Defendants.** | ) ) | **ORAL ARGUMENT REQUESTED** |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE

Edward F. Harold, T.A.
  La. Bar Roll No. 21672
Keith M. Pyburn, Jr.
  La. Bar Roll No. 10914
Timothy H. Scott
  La. Bar Roll No. 21373
Michelle I. Anderson
  La. Bar Roll No. 32090

**Fisher & Phillips LLP**
201 St. Charles Avenue, Suite 3710
New Orleans, LA  70170
Telephone: (504) 522-3303
Facsimile: (504) 529-3850
eharold@laborlawyers.com
kpyburn@laborlawyers.com
tscott@laborlawyers.com
manderson@laborlawyers.com

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................... ii

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS
MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE ...............................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ..................................................................................................6

    I.     Plaintiffs Have Stated a Viable Claim and There is No
         Valid Basis Upon Which to Dismiss the Action.......................................6

    II.    Transfer of Venue Would Be Improper ....................................................7

         a.     Defendant-Intervenors Waived Their Privilege to Transfer Venue............7

         b.     Intervenor Foreign Workers Have No Cognizable
               or Legal Interest in This Matter ................................................9

         c.     Organizations Admit an Inherent Conflict of Interests
               Between Interests of Their Members: American Workers Whose
               Jobs and Livelihoods, Now and in the Future, Are at Stake and
               the Interests of Their Foreign Members and Affiliates;
               and They Are Not Duly Designated Representatives of Any Employee
               Group Under the National Labor Relations Act ........................................11

         d.     Plaintiffs Haven No Connection to the Eastern District
               of Pennsylvania. .....................................................................14

    III.    Plaintiffs' Complaint Is Not A Collateral Attack On, Nor Will a
         Decision in This Case Conflict with, the Orders Issued in *CATA v. Solis*............ 15

CONCLUSION...............................................................................................22

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

A.F.L.-C.I.O. v Dole,
  923 F.2d 182 (D.C.Cir 1991) ...................................................................................10

CATA v. Solis,
  No. 09-240, 2010 WL 3431761 ...........................................................................3, 18

CATA v. Solis,
  No. 09-240, 2011 WL 2011 .......................................................................................4

Commonwealth Edison Co. v. Train,
  71 F.R.D. 391 (N.D. Ill. 1976) ...............................................................................7, 8

Dow Chem. USA v. Consumer Prod. Safety Comm'n.,
  459 F. Supp. 378, 395 (W.D. La. 1978) .....................................................................6

Elton Orchards, Inc. v. Brennan, 508 F.2d 493,
  500 (1st Cir. 1974) .....................................................................................................5

Flecha v. Quiros,
  567 F.2d 1154 (1st Cir. 1977) .................................................................................5, 9

Int'l Snowmobile Manufacturers Ass'n v. Norton,
  304 F. Supp. 2d 1278 (D. Wyo. 2004) ..................................................................16, 17

Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,
  522 U.S. 479 (1998) ...................................................................................................9

Natural Resources Defense Council, Inc. v. Evans,
  316 F. 3d 904 (9th Cir 2003) ...................................................................................19

Orengo Caraballo v. Reich,
  11 F.3d 186 (D.C. Cir. 1993) ................................................................................5, 10

Phillips Petroleum Co. v. Federal Energy Admin.,
  435 F. Supp. 1234 (D. Del. 1977) ............................................................................ 14

Rogers v. Larson,
  563 F.2d 617 (3d Cir. 1977) ...................................................................................5, 9

Solomon v. Continental American Life Insurance Co.,
   472 F.2d 1043 (C.A.3, 1973) ...................................................................................14

Suttle v. Reich Bros. Construction Co.,
   333 U.S. 163 (1948)..................................................................................................15

Trans World Airlines, Inc. v. Civil Aeronautics Board,
   339 F.2d 56 (2d Cir. 1964)..........................................................................................7

United States v. Johnson,
   632 F.3d 912 (5th Cir. 2011) ....................................................................................19

Van Dusen v. Barrack,
   376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)..................................................14

Williams v. Usery,
   531 F.2d 305 (5th Cir. 1976) ...............................................................................12, 13

## STATUTES

8 USC 1101(a)(15)(H)(ii)(b)......................................................................................11
28 U.S.C. § 1391(e) ..................................................................................................14
28 U.S.C. § 1404(a) ..................................................................................................14
5 U.S.C. § 551(4) ......................................................................................................20
8 U.S.C. § 1101 .........................................................................................................12
20 C.F.R. § 655.10(b)(6)..............................................................................................2
National Labor Relations Act, 29 U.S.C. § 157...................................................13, 14
National Labor Relations Act, 29 U.S.C. §159..........................................................13

## TREATISE

Charles Alan Wright & Arthur R. Miller, Federal Practice
   and Procedure § 1918 (3d ed. 2007) ..........................................................................78

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **THE LOUISIANA FORESTRY ASSOCIATION, INC.** *et al.* | ) ) ) | **Case No. 1:11-cv-01623** |
| **Plaintiffs,** | ) ) | **Judge:  DRELL** |
| **v.** | ) ) | **Magistrate:  KIRK** |
| **HILDA L.  SOLIS,** *et al.,* | ) ) | |
| **Defendants.** | ) ) ) | **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS**
**MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE**

Plaintiffs The Louisiana Forestry Association, Inc.; Outdoor Amusement Business

Association, Inc.; Crawfish Processors Alliance, Inc.; American Shrimp Processors Association;

Forest Resources Association, Inc.; American Hotel & Lodging Association; and American

Sugar Cane League of the U.S.A., Inc. (collectively, "Plaintiffs," the "H-2B Alliance" or the "H-

2B Employers), hereby submit this memorandum in opposition of Defendant-Intervenors'

Motion to Dismiss or Alternatively to Transfer Venue.  Defendant-Intervenors argue that

Plaintiffs' complaint seeks to collaterally attack the orders issued in the *CATA* litigation. That is

not so.  The issues in this case arise from the DOL's rulemaking and occurred because of the

*CATA* litigation but these current issues were not presented in the *CATA* litigation.  This Court's

jurisdiction over this case will not conflict with the orders issued in the *CATA* litigation upon

which DOL acted.

1

## STATEMENT OF FACTS

The Plaintiffs in this case bring this action for relief because of *Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program*, Final Rule, 76 Fed. Reg. 45667 (Aug. 1, 2011) ("Wage Rule II"); *Wage Methodology for the Temporary Non- Agricultural Employment H-2B Program, Notice of Proposed Rulemaking*, 76 Fed. Reg. 37686 (June 28, 2011) ("Wage NPRM II"); *Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program*, Final Rule, 76 Fed. Reg. 3452 (Jan. 19, 2011) ("Wage Rule I"); and *Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program*, Notice of Proposed Rulemaking, 75 Fed. Reg. 61578 (Oct. 5, 2010) ("Wage NPRM I").  The Wage Rule II imposes immediate retroactive, substantive, and burdensome changes to the current wage obligations, requirements and relied upon expectations of employers who employ H-2B foreign and certain similarly employed U.S. workers (20 C.F.R. § 655.10(b)(6)) in calendar year 2011, and thereafter pursuant to the regulatory requirements for certifications and issuance of visas based on such certifications promulgated by DOL in *Labor Certification Process and Enforcement for Temporary Employment in Occupations Other Than Agriculture or Registered Nursing in the United States (H–2B Workers), and Other Technical Changes*, Final Rule, 73 Fed. Reg. 78020 (Dec. 19, 2008) ("2008 DOL Final Rule") and by DHS in *Changes to Requirements Affecting H-2B Nonimmigrants and their Employers*, Final Rule, 73 Fed. Reg. 78104 (Dec. 19, 2008) ("2008 DHS Final Rule"). The Plaintiffs contend that the Wage Rule II should be enjoined before it goes into effect on September 30, 2011, leaving the current status under the 2008 DOL Final Rule and the 2008 DHS Final Rule still in effect until lawful changes are made in accordance with legally required procedures.

Shortly after the 2008 DOL Final Rule was issued, the Comité de Apoyo a Los Trabajadores Agricolas ("CATA") filed suit in the Eastern District of Pennsylvania alleging the

Final Rule was promulgated in violation of the APA in a case styled as *CATA v. Solis*, CA. No. 09-240 (E.D. Pa.).  On August 31, 2010, the *CATA* court rejected CATA's challenges to most provisions in the 2008 DOL Final Rule, but the court did find some provisions of the rule violated the APA. It found that DOL had not adequately explained in the rulemaking the reason it had formally adopted skill levels as part of H-2B prevailing wage determinations, a practice it had been following under TEGL-based administrative program and that DOL had refused to accept comments on its use of the OES data set.  *See CATA v. Solis*, No. 09-240, 2010 WL 3431761, slip op. at 37-8, 49 (E.D. Pa., Aug. 31, 2010).  It did not find that DOL was forbidden under applicable legal principles from adopting some skill-level based methodology if it better explained its reasons or from adopting the OES data as proper if DOL accepted comments on that proposed and otherwise complied with the APA in its consideration of these matters.  The *CATA* court did not vacate the wage methodology.  In short the *CATA* court simply directed DOL to correct the deficiencies by promulgating prevailing wage methodology provisions in accordance with the APA.  *Id.* at 50.

Following the *CATA* decision of August 31, 2010, on October 5, 2011, DOL published a Notice of Proposed Rulemaking for Wage NPRM I in the Federal Register providing a 30-day public comment period. 75 Fed. Reg. 61578 (Oct. 5, 2010).  The NPRMI made a fundamental change to the definition of "prevailing wage" and changed the process for the assignment of wages in the H-2B program. The comment period was extended for an additional 8 days. 75 Fed. Reg. 67662 (Nov. 3, 2010).  Despite the overwhelming number of comments opposing the Wage NPRM I, on January 19, 2011, DOL finalized the rule as Wage Rule I with content nearly identical to what had been proposed in Wage NPRM I.  76 Fed. Reg. 3452 (Jan. 19, 2011).  DOL gave no notice that it intended to apply the new wage requirements to employers that had already

made financial commitments, obtained certifications, had workers obtain visas, etc. in reliance

on their existing wage rates.  The *CATA* court order did not require DOL to make the regulations

that would be properly promulgated in accordance with APA requirements retroactively

applicable.  In fact, the *CATA* court did not require that any substantive requirements be included

or excluded from the rule the *CATA* court merely said DOL had not procedurally complied with

the APA.

Following publication of Wage Rule I, the plaintiffs in the CATA litigation challenged

the effective date contained in the Rule, alleging the date violated the APA and INA. On June 16,

2011, the CATA court invalidated the January 1, 2012, effective date of Wage Rule I as being in

violation of the APA.  The Court relied on DOL's concession, which as a matter of law and

discussed below is incorrect, that in setting the effective date, DOL impermissibly considered the

effect on employers resulting from the new mandates imposed by Wage Rule I.  Thus, the court

directed DOL to engage in a new rulemaking to establish a new effective date. *See CATA v.*

*Solis*, No. 09-240, 2011 WL 2011 U.S. Dist. Lexis 64440, at 19-20 (E.D. Pa., June 16, 2011).  In

its own description of what it had ordered DOL to do, the *CATA* court, referring to prior Orders

said the "August 30 order" mandates only that DOL publish new rules concerning the calculation

of the prevailing wage rate in the H-2B program by December 28, 2010." *Id.*  Notably in this

case, the *CATA* court further explained that in publication of the proposed new wage Rule, "the

public . . . would be justified in assuming that any delay in the effective date would mirror the

minimum delays associated with the issuance of similar wage regulations over the past several

decades."  In fact over recent times, the wage rules have not been applied to jobs that were

already existing certified jobs on the date the new rule became effective.  Moreover, in its

June 16, 2011 Order the *CATA* court did <u>not</u> <u>rule</u> that DOL may not consider the hardships to

employers as a basis for delaying the effective date of the new prevailing wage rule.  To be sure Intervener Defendants here, Plaintiffs in *CATA,* argued that in the face of at least four contrary circuit rulings, that DOL could not consider employer interests, and DOL erroneously conceded that it could not consider employer interests.  In citing the *CATA* court to *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 500 (1st Cir. 1974), DOL appears to have suggested to the Court that the *Elton Orchards* case was the final word of the First Circuit as to whom DOL's duties under the H-2 program run when in fact *Flecha v. Quiros*, 567 F.2d 1154, 1156 (1st Cir. 1977) expressly adopts an older decision of the Third Circuit that says a DOL must "balance" employers' and workers' interests, *Rogers v. Larson*, 563 F.2d 617, 626 (3d Cir. 1977) and concludes that the rights of U.S. workers and employers must be part of "a manageable scheme . . . that is fair to both sides."  *Flecha*, 567 F.2d at 1156.

While DOL is chargeable for knowing and applying its own H-2 case law history, notably *CATA* itself was a party to *Orengo Caraballo v. Reich*, 11 F.3d 186, 190 (D.C. Cir. 1993), that adopted both *Rogers* and *Flecha* in stating that DOL owes duties to both employer and employee citizens under the H-2 Program.

But what is most significant here is that the *CATA* Court's acceptance of those parties' erroneous statement of the law was not a court order but a stipulation by DOL.

On June 28, 2011, the Department announced a Notice of Proposed Rulemaking to accelerate drastically the previously announced effective date of Wage Rule I by making the Rule's requirements, including new methodology and drastically higher wage rates - some are more than 100% increases - effective on or about October 1, 2011, rather than January 1, 2012.

On July 20, 2011, the *CATA* court issued an order denying the *CATA* plaintiffs' request for further enforcement of the judgment in the case.

On August 1, 2011, DOL announced that the Rule now in issue in this case would become effective September 30, 2011, and would be applicable to certifications and visas already in place.  76 Fed. Reg. 45667 (Aug. 1, 2011).

On September 19, 2011, Comité de Apoyo a Los Trabajadores Agrícolas, Pineros y Campesinos Unidos Del Noroeste, the Alliance of Forest Workers and Harvesters, Salvador Martinez Barrera, J. Jesús Vite Lopez, Romulo Abuleche, and Jahemel Abuleche ("Defendant-Intervenors" or "Intervenors") moved to intervene as defendants in this case.  Defendant-Intervenors also moved to dismiss the complaint, or alternatively to transfer venue to the United States District Court for the Eastern District of Pennsylvania where the *CATA* litigation took place.  Defendant-Intervenors argue that Plaintiffs' complaint seeks to collaterally attack the orders issued in the *CATA* litigation. The issues in this case arise regarding the DOL's rulemaking were not presented in the *CATA* litigation and this Court's jurisdiction over this case will not conflict with the orders issued in the *CATA* litigation.

## ARGUMENT

### I.   Plaintiffs Have Stated a Viable Claim and There is No Valid Basis upon Which to Dismiss the Action.

Prospective Defendant-Intervenors do not have any basis for asking the Court to dismiss this action.  Plaintiffs' complaint sets forth cognizable claims under the APA and RFA and, as further explained in its Memorandum of Law in Support of Motion for Preliminary Injunction, is likely to succeed on those claims.  Because Plaintiffs have stated viable claims, the complaint should not be dismissed.  *See Dow Chem., USA v. Consumer Prod. Safety Comm'n.,* 459 F. Supp. 378, 395 (W.D. La. 1978) (denying motion to dismiss where plaintiffs presented a claim under the APA based on the defendant's rulemaking upon which relief could be granted).

II.     **Transfer of Venue Would Be Improper.**

a.     **Defendant-Intervenors Waived Their Privilege to Transfer Venue.**

The prospective Defendant-Intervenors[1] seek, based on a mischaracterization of the nature of the instant case, to change the venue for this action to a venue in Pennsylvania that has no connection whatsoever to the Plaintiffs or this case.  Moreover, Defendant-Intervenors upon voluntarily attempting to interject themselves into this litigation waived venue.  The purpose of a venue challenge is to alleviate the hardship on a defendant arising from the defendant being forced to defend a case in an inconvenient forum.  *See Commonwealth Edison Co. v. Train*, 71 F.R.D. 391 (N.D. Ill. 1976).  Courts and commentators repeatedly opine that "[v]enue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."  *Trans World Airlines, Inc. v. Civil Aeronautics Board*, 339 F.2d 56, 63-64 (2d Cir. 1964); *see also Commonwealth Edison Co.*, 71 F.R.D. at 394; *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, and Enforcement*, 2011 U.S. Dist. LEXIS 58004 (S.D. Ala. May 23, 2011 ); *Mobil Oil Corp. v. Dep't of Energy*, 1981 U.S. Dist. LEXIS 9437, at *6 (S.D.N.Y. Feb. 6, 1981); 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1918 (3d ed. 2007).

The rationale behind these findings is that an intervenor enters a case subject to the venue that already exists.  *Commonwealth Edison Co.*, 71 F.R.D. at 394.  The difference between the intervenor and the original defendant is that the intervenor voluntarily invoked the court's jurisdiction, whereas the defendant was required to enter the case.  6 James Wm. Moore et al., Moore's Federal Practice ¶ 24.22 (3d ed. 1997); 7C Charles Alan Wright & Arthur R. Miller,

---

[1] The prospective Defendant-Intervenors seek to intervene, the Court has not yet granted the Motion to Intervene, nor have Defendant-Intervenors sought consent to their motion from all parties to this litigation.

Federal Practice and Procedure § 1918 (3d ed. 2007).  This not an outdated concept, as U.S. District Court for the Southern District of Alabama noted just a few moths ago that "the cases finding that intervenors cannot challenge venue are not antiquated, dust-encrusted relics, but instead date all the way through the present."  *Defenders of Wildlife*, 2011 U.S. Dist. LEXIS 58004, at *42.  In *Defenders of Wildlife*, just as in the present case, the Federal Defendants have not objected to venue and thus the "intervenors area not entitled to assert that privilege on their behalf."  *Id.*

In a proceeding with facts similar to the instant case, the U.S. Court for the Northern District of Illinois denied a motion to transfer venue based on the movant's status as an intervenor.  *Commonwealth Edison Co.*, 71 F.R.D. at 394.  Plaintiffs in *Commonwealth Edison*, brought an action in the U.S. District Court for the Northern District of Illinois against Russell E. Train, the Administrator of the Environmental Protection Agency ("EPA"), requesting declaratory judgment finding that certain regulations Mr. Train issued were invalid and requested a permanent injunction prohibiting enforcement of those regulations.  *Id*. at 393.  The contested regulations resulted from a previous lawsuit initiated by the Natural Resources Defense Council, Inc. ("NRDC") against Mr. Train in the U.S. District Court for the District of Columbia to compel Mr. Train to implement certain provisions of the Federal Water Pollution Control Act by issuing specific regulations.  *Id.*  Following that lawsuit and the promulgation of the regulations, Commonwealth Edison then sued Mr. Train and the EPA seeking to invalidate the regulations. NRDC moved to intervene in the Northern District of Illinois suit and requested the court change venue to U.S. District Court for the District of Columbia.  *Id.*  The Court denied the NRDC's motion to transfer venue because, as an intervenor, NRDC waived its privileges to change the venue of the suit.  *Id.* at 394.

Assuming *arguendo* that the Court grants Defendant-Intervenors' Motion to Intervene in the instant proceeding, the Court should deny Defendant-Intervenors' Motion to Transfer Venue. Defendant-Intervenors voluntarily chose to enter the instant litigation and as such waived their objections to the venue.

Additionally, none of the Defendant-Intervenors has demonstrated that they possess the standing required to participate in this suit.  None of the prospective Intervenor-Defendants union, organizations, or individuals has shown that it has suffered an injury in fact and that the injury affects an interest "arguably within the zone of interests to be protected" by the statutes underlying the basis for this suit.  *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479, 488 (1998).  Indeed, the prospective Defendant-Intervenor individuals are each foreign nationals.

### b.     Intervenor Foreign Workers Have No Cognizable or Legal Interest in This Matter.

None of the four named proposed intervenor defendants is an American worker whose pay—continued at either at the present rate until it is lawfully changed or increased --or whose job is affected by the outcome of this litigation. [Doc 10., paras. 5-7].  Indeed in this dispute over whether DOL may lawfully require pay increases that American employers contend will be ruinous and will lead to widespread job losses and business failures,  pursuant to a methodology they urge is impermissibly flawed and not supportable even under APA standards for both procedural errors and substantive reasons, these foreign workers' wishes as to what requirements DOL may adopt  are not even within the zone of interests that are protectable under the balancing of interests of 1) American workers "similarly employed" and 2) employers that is required under 8 U.S.C. §§1101(a)(H)(15)(ii)(b) and 1184(c)(1).  *Rogers v. Larson*, 563 F.2d 617,626 (3d Cir. 1977) (noting the balancing of those interests of American employers and

American workers similarly employed that is required under the statutory scheme), *Flecha v. Quiros*, 567 F.2d 1154, 1156-57 (1st Cir. 1977) (noting the duty of DOL to "provide a manageable scheme . . . that is fair to both sides," speaking of American workers and American employers); *A.F.L.-C.I.O. v. Dole*, 923 F.2d 182, 187 (D.C.Cir 1991) (approving DOL action in part because it would "neither ratchet wages upward [for American workers], driving growers out of business nor perpetuate wage depression."); *Orengo v Caraballo v. Reich*, 11 F.3d 186, 190 (D.C.Cir. 1991) (pointing out duty of DOL to "assure [employers] an adequate labor force . . . and to protect the jobs of citizens on the other" quoting *Rogers*" (emphasis supplied).

These individuals simply have no right even to try to influence DOL policy regarding the temporary worker program. Moreover, they have no stake in the success or failures of American businesses. They best are served when American workers continue to reject the employers' jobs; otherwise, they would not be needed to fill unfilled jobs; but most significantly here, they are not American workers who will suffer not only job losses but future unemployment because the employers are simply unable to charge enough for their products or services to provide jobs now or stay in business to provide employment to anybody---American workers in the jobs that are now filled by foreign guestworkers or the American workers in other jobs whose livelihoods depend on H-2B workers who are willing to perform them, as unquestionably there are at current wage requirements that intervenors disdain.

Their intervention highlights the fact that retroactive application of the rule will apply mostly to foreign workers in 2011 to the detriment of U.S. jobs, U. S. workers and the U.S. economy in general.

  **c.**  **Organizations Admit an Inherent Conflict of Interests Between Interests of Their Members: American Workers Whose Jobs and Livelihoods, Now and in the Future, are at Stake and the Interests of Their Foreign Members and Affiliates;   and They Are Not Duly Designated Representatives of Any Employee Group Under the National Labor Relations Act.**

  The proposed intervenor organizations all purport to represent the interests of both American and foreign guestworkers. [Doc. 10, paras. 1-3]. Perhaps doing so without creating an irreconcilable conflict of interests can be possible once the wages, terms and conditions of employment applicable to all workers, U.S. and foreign guestworkers, have been settled upon. In such a case, arguably all similarly situated are entitled to the same treatment and enforcement of rights.

  That is not the case here, however.  In the first place, foreign workers properly have no say-so in the wages or other terms of H-2B employment or DOL regulations.  DOL does have a duty to consider the interests of both American workers "similarly employed" and American employers under the statute and cases discussed above.  Insofar as the organizations urge adoption of wage requirements the employer's urge will cause American citizen employees to lose their jobs not only now and but for the future because the jobs are simply taken out of the American economy, the foreign workers have no stake in the outcome.  This is so even if the concern were only that these new rules may cause such dire consequences.  They can ask for the sky and if that is not granted, lose nothing because they are not entitled to these jobs or to participate in the American economy anyway.  The wage increases here in issue are not merely 3% raises or even 5-8% immediate raises but in some erratic and capricious circumstances, 129% increases because of the new methodology.  These increases are coupled with capricious, inconsistent changes in the job classifications from the classifications under which employers'

jobs were certified, with some employers being told their wages are now determined under new and higher paying job title than other employers whose employees are working in the same locale, under the same job description.   These extraordinary increases coupled with the variability of what DOL has told employers they must pay for the same work and the failure of DOL even to have told other employers what they must pay starting Friday, September 30, are enough in fact to drive businesses out of business, losing those jobs—those income opportunities forever, not only for any American employees who in the future might want jobs in the categories for which H-2B visas have been sought and are now held by guestworkers but also all other jobs now being held by and providing income to American workers.

There are thousands of these jobs at stake that are currently held by Americans whose jobs are  made possible because there are H-2B visa workers who are willing to do the jobs that make these American jobs possible, and there are thousands more jobs at stake in businesses that depend on the survival and economic viability of the H-2B employers to buy their products and services or to provide them products and services that those American businesses must have available here in the United States.

The consideration that is legally impermissible, under applicable statutory law and caselaw, is for DOL or this Court to consider what foreign workers say they want.  Under the Immigration and Nationality Act, as amended, at 8 U.S.C. § 1101, applicable here, the "authority [of the Secretary of Labor] is limited to making an economic determination of what rate must be paid to all workers to neutralize any 'adverse effect' resultant from the influx of temporary foreign workers." *Williams v. Usery*, 531 F.2d 305, 306 (5th Cir. 1976).  The organizations make it plain that in urging   DOL's   dangerous wage methodology and resulting potentially catastrophic increases and erratic pay requirements, they purport to speak for foreign workers as

well as American members of their organizations, creating an inherent conflict under applicable law, urging a positions that neither DOL nor this Court may properly consider.

The controlling rationale in *Williams* leads to another reason the organizations' views may not be considered. Emphasizing the limited objective that the Secretary may lawfully pursue when setting H-2 wage methodologies to avoid adverse effect created by the presence of foreign workers, the *Williams* Court explained that "the Secretary has no authority to set a wage rate on the basis of attractiveness"  even to American workers. *Id*. Setting a "wage rate high enough to attract those domestic workers not otherwise willing to work in sugar cane jumps well beyond the discretionary authority of the Secretary." *Id*.   A7 307. Notably, that is so even when the workers complaining about pay rates are Americans.

The Secretary may not aim to set American H-2 employers' wages, in accordance with the Fifth Circuit ruling in *Williams v. Usery*, to accomplish any objective other than the avoidance of  "a lowering  of wages" of similarly employed  American workers' wages -- that is avoiding "a general wage deflation from the employment of foreign workers." *Id*. 531 F. 2d at 307.   The stakes in this matter are very high.  None of these organizations claims that "the majority of employees in [any appropriate bargaining]  unit of employees has designated it to represent them with respect to rates of pay here in issue as provided for under the National Labor Relations Act, 29 U.S.C. §159, or that it is entitled under any other principle to represent American workers generally in this matter.  That is so even if they were not already in an irreconcilable conflict of interests vis-à-vis the claims of their foreign guestworker members and their asserted American workers in all sorts of jobs. To the extent that they may claim that Federal Rules of Civil Procedure allow for class actions, that rule may not be interpreted to conflict with the Section 7 rights of employees under the National Labor Relations Act, 29

U.S.C. § 157 who have not designated any of these organizations to bargain or otherwise act on their behalf.   The view of these organizations should not be considered for any purpose, including whether this action should be dismissed or transferred.

        **d.**      **Plaintiffs Have No Connection to the Eastern District of Pennsylvania.**

Motions to transfer are governed by 28 U.S.C. § 1404(a) which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it *might have been brought.*" *Phillips Petroleum Co. v. Federal Energy Admin*., 435 F. Supp. 1234 (D. Del. 1977) (emphasis supplied). The Court ruling on the potential transfer must exercise its discretion in evaluating the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Id.*; *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043, 1045 (C.A.3, 1973). Movants have the burden of establishing that a case should be transferred, and they have not done so here.

Subsection 1404(a) allows a district Court the power to transfer such actions only if the plaintiffs  had an "`unqualified right' to bring the action[s] in the transferee forum at the time of the commencement of the action." *Petroleum Co.,* 435 F. Supp. at 1236 (quoting  *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (C.A.3, 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971)); *accord Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).   In short, venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.

Here, Defendant-Intervenors sidestep the reality that venue would never have been proper in the Eastern District of Pennsylvania.  Venue of an action by a corporation against an officer or agency of the federal government is regulated by 28 U.S.C. § 1391(e) which reads in part:

14

> "A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or *(4) the plaintiff resides if no real property is involved in the action."*

28 U.S.C. § 1391(e) (emphasis supplied).

In this case, of the four enumerated conditions, only the fourth is  relevant to resolving the question of where this action might have been brought.  Within the meaning of the venue statute,  the "residence" of a corporation is *only* in the "State and district in which it has been incorporated."'  *Suttle v. Reich Bros. Construction Co.,* 333 U.S. 163, 166 (1948).  None of the plaintiffs in this action reside in the Eastern District of Pennsylvania and thus venue would not have been proper in that forum if they had attempted to bring this action there.  Consequently, the Court lacks the power under subsection 1404(a) to transfer this case to the Eastern District of Pennsylvania.

## III.    Plaintiffs' Complaint Is Not A Collateral Attack On, Nor Will a Decision in This Case Conflict with, the Orders Issued in *CATA v. Solis.*

The prospective Defendant-Intervenors suggest, in an strained effort to support their request for a change of venue, that Plaintiffs seek to pursue a collateral attack on the Orders issued in *CATA v. Solis*, CA No. 09-240 (E.D. Pa.) through this action.  That is not so as discussed  at 4, *supra*.  The legal questions at issue in this case concern whether the Department of Labor properly conducted a rulemaking in accordance with the requirements of the Administrative Procedure Act ("APA").  That Defendant-Intervenors previously brought an APA challenge against a prior Department of Labor ("DOL")  rulemaking in a matter that is now closed does not grant Defendant-Intervenors the right or privilege to dictate the location of all future litigation challenging a DOL regulatory action simply because Defendant-Intervenors feel

15

they might be interested in the such litigation.  Such a notion turns on its head basic principles of fairness and impermissibly impinges on a plaintiff's ability to determine the venue that it believes is most appropriate and convenient for the prosecution of its case.  The relevant facts and grounds giving rise to the instant lawsuit are substantively and temporally dissimilar from those present in the *CATA* litigation, and there is no risk of conflicting orders.  Therefore, transfer of venue in this case is not appropriate.

Cases cited by Defendant-Intervenors are factually distinguishable from the instant case. In addition, to the extent that this action may be seen as having some similarity with the earlier *CATA* litigation because they both involve challenges to the agency's rulemakings, the issues raised in this case are separate from the issues raised in that case.  In a case procedurally similar to the instant case the District of Wyoming found that earlier litigation and Orders from the D.C. District Court did not prevent the District of Wyoming from deciding the validity of a subsequently issued rule.  *See Int'l Snowmobile Manufacturers Ass'n v. Norton*, 304 F. Supp. 2d 1278, 1285 (D. Wyo. 2004).  The case involved a series of rulemakings over several years relating to the use of snowmobiles in national parks.  Litigation was initially commenced in Wyoming challenging one rule, then subsequent litigation ensued in the District of Columbia challenging another rule.  Then, a third round of litigation subsequently commenced in Wyoming again.  In the third proceeding in Wyoming, Defendant-Intervenors argued, just as Defendant-Intervenors argue here, that the court did not have jurisdiction to hear the dispute because a decision by the court would directly conflict with a decision previously issued by the District of Columbia court in the second round of litigation.   The Wyoming court rejected the argument, noting that "the issue in this case is not the validity or the wisdom of the D.C. District Court's [prior] Judgment and Memorandum Opinion," but rather the issue is the validity of a different

16

rulemaking with separate and distinct issues that present no concerns with judicial comity  *Id.*

Significantly, in the second proceeding, the District of Columbia District Court confronted the same venue issue regarding whether that proceeding should be transferred to Wyoming because of the potential for overlap of issues with the first proceeding.  The District of Columbia court denied the motion to transfer, finding that the issues in the two cases were different and distinct.  *Id.*  The Wyoming court quoted the District of Columbia court's observation that

> [t]his doctrine [of federal comity] has no application unless an identical complaint is filed in two different federal courts, which no one contends is the case here.  Furthermore, . . . the federal comity rule is a discretionary doctrine.

*Id.* (internal quotes and citations omitted).

The reasoning in *Int'l Snowmobile* is directly applicable to the instant case.  Plaintiffs here do not challenge the decisions of the *CATA* court, rather this is a challenge to a wholly different rulemaking and involves issues that were not part of the earlier *CATA* orders or other rulings of that court.  The fact that DOL may have adopted as a justification for its rulemaking some reasoning contained in the *CATA* decision, in no way transforms a challenge of the DOL rulemaking into a challenge of the *CATA* decision.  For purposes of this action, the DOL rulemaking has to stand or fall based on its compliance with the APA – not on whether it complies with an order from the *CATA* litigation.  Plaintiffs in this case take issue with the process, as well as the substance, of the Rule DOL promulgated on August 1, 2011 (Wage Rule II).  Both the process followed in issuing the rule and the substance of the rule itself are governed by statutory standards set by Congress in the APA, and not by an Order from *CATA* court.  Indeed, no Order from the *CATA* court has dictated the specific process or the substantive result of the rulemaking challenged here, other than to direct DOL to follow the law.  To the contrary,

those orders reaffirmed the statutory standards that govern DOL's conduct: compliance with the APA.

DOL's attempt to seek refuge for its present violations of the APA by claiming it only did what the *CATA* Court told it to do is a transparently self-serving post-hoc rationalization for its failure to conduct a rulemaking in compliance with the law.  It also materially misstates DOL's duty to employers under  law.  That the *CATA* Court accepted  DOL's erroneous statement as a stipulation from DOL did not convert the stipulation into an order of Court.  The Department's "Nuremburg defense" is obviously ineffective given the plain language of the *CATA* court's Opinions and Orders.  Neither the specific process DOL pursued, nor the substance of the policy choices in the Wage Rule II rulemaking was mandated by the *CATA* Opinions and Orders.  The same is true for Wage Rule I.  Significantly, in the original *CATA* case, which led to DOL issuing Wage Rule I, the court did not vacate DOL's wage methodology and reliance on OES data in the 2008 Rule.  Instead, the court just directed DOL to correct the deficiencies (failure to accept public comment) in the 2008 rulemaking by promulgating the prevailing wage methodology provisions in accordance with the APA.  *See CATA v. Solis*, No. 09-240, 2010 WL 3431761, slip op. at 50 (E.D. Pa., Aug. 30, 2010).

The Department's "Nuremburg  defense" is further undermined by the fact that it did not even follow the Court's Order, but instead used the Order as a basis to pursue its own new policy goals in the rulemaking.  75 Fed. Reg. 61579 (citing CATA Order directing the Department to promulgate new rules in compliance with the APA).[2]  The *CATA* court did not dictate to DOL the content of the H-2B wage methodology, the *CATA* court did not prohibit DOL from

---

[2] DOL can, of course, consistent with its authority (to the extent it has any) pursue new policy goals in a rulemaking, provided it does so in compliance with the APA.

proposing the same wage methodology that was adopted in the 2008 DOL Final Rule.  Further, the decision by the *CATA* court did not require or even contemplate that DOL would issue the entirely new prevailing wage methodology regulations here in issue.  Instead of following the Court's direction to remedy the shortcoming of the 2008 rule by undertaking notice and comment rulemaking that included a more complete explanation of the reasons DOL had selected (and had continued to use for nearly 15 years) the OES prevailing wage methodology, DOL embarked upon an entirely new substantive rulemaking to make a fundamental change to the definition of "prevailing wage" and to change the process for the assignment of wages in the H-2B program.  None of this was in any way required by the *CATA* opinion and Order.

The Defendant-Intervenors themselves, as plaintiffs in that case, challenged the effective date of that new rulemaking (Wage Rule I), but they did not challenge any of the substantive provisions of the rule.  The *CATA* court's June 16, 2011 order in response to the challenge of the effective date was very narrow - it merely ordered DOL to announce a new effective date within forty-five days.  Nothing in the *CATA* court's June 16, 2011 order prevented DOL from giving the appropriate notice and comment period.  Indeed the order specifically ordered DOL to announce a new effective date "in compliance with the Administrative Procedure Act, the Immigration and Nationality Act, and this court's orders."  *See* Order, *CATA v. Solis*, Case 2:09-cv-240-LP (E.D. Pa. June 16, 2011) [Docket #120].  Although the APA does not specify a minimum comment period length, a comment period of 30 days in generally considered reasonable absent an exception for good cause.  The Department has not invoked the statutory exemption for good cause in the Wage NPRM II as a basis for departing from the standard comment period.  *See, e.g., Natural Resources Defense Council, Inc. v. Evans*, 316 F. 3d 904 (9th Cir 2003); *Cf. United States v. Johnson*, 632 F.3d 912, 928 (5th Cir. 2011) (the "good cause"

19

exception to notice-and-comment should be "read narrowly in order to avoid providing agencies with an 'escape clause' from the requirements Congress prescribed.").

Plaintiffs here are not challenging the *CATA* court's orders but rather DOL's compliance with the law governing the rule-making that followed the prior *CATA* decisions. Defendant-Intervenors' prior challenge of the effective date in no way gives them "ownership" over the venue of any other challenge to the substantive provisions in Wage Rule I.  In response to the challenge of the effective date, DOL promulgated another new regulation (Wage Rule II) that had the effect of doing much more than simply changing the effective date of Wage Rule I; it swept within the requirements of Wage Rule I, hundreds, if not thousands of employers that were not previously subject to its mandates and burdens and who, in fact, had made irrevocable business decisions based on the Department's definitive statement in January 2011 that the employers would not be subject to Wage Rule I until January of 2012.

There can be no doubt that Wage Rule II is an entirely new rulemaking, having the effect of formulating and implementing a new rule that amended the existing substantive regulatory obligations of employers in 2011 that were not otherwise subject to the regulatory provisions of the Wage Rule I, as well as those that are now differently affected by its requirements.  *See* 5 U.S.C. § 551(4) (defining "rule" as  "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . .  and includes the approval or prescription for the future of rates [or] wages").  This entirely new rulemaking involves distinct questions of whether it was promulgated in accordance with the APA and, just like *Int'l Snowmobile, is* an entirely new rulemaking that is not part of the Defendant-Intervenors' prior challenge to Wage Rule I's effective date.

There is nothing about the challenge of Wage Rule II or the application of the substantive provisions of Wage Rule I that would conflict with prior decisions of the *CATA* court.  If anything, this challenge complements the prior litigation, as the CATA court simply directed DOL to engage in rulemaking in accordance with the law and this action challenges whether DOL has in fact complied with the law.  But independently of the CATA court's order directing DOL to comply with the law, the agency had a pre-existing duty to comply with the law, including the APA and the RFA.  Just because the prospective Defendant-Intervenors may believe DOL has complied with the law in issuing Wage Rule I, they possess no legal right to dictate the venue for any plaintiff that seeks an independent determination of whether DOL has complied *with the law*, rather than with a prior court Order.  Moreover, the *CATA* court in no way possess exclusive jurisdiction over these questions of federal law.

Defendant-Intervenors' novel theory on venue would require that if a party challenges certain provisions of a rulemaking in one court and prevails, and if the agency subsequently issues an entirely different new rule containing a host of new issues that affect different parties differently, any challenge to those new rules by any other party at anytime must be filed in the court where a previous challenge occurred.  Such a theory has been rejected by the courts.  *See* Commonwealth Edison at 392 ("We do not believe . . . that one can acquire an enforceable interest in a statute merely by having obtained a declaratory judgment construing that statute . . . To say that [the intervenor] has an enforceable interest in these regulations would mean that any time a party brought suit involving such regulations, [the intervenor] could step in . . . almost as if it, and not the [agency], had promulgated them.")  Moreover, if such an unlikely scenario were required, as Defendant-Intervenors suggest, the venue provisions of the APA would certainly so

21

dictate, but they do not, assuming such a principle worked otherwise in accordance with due

process and host of other legal principles.

<u>**CONCLUSION**</u>

For all these reasons, the Plaintiffs request that the Court deny Defendant-Intervenors

Motion to Dismiss or Alternatively to Transfer Venue.

Respectfully submitted, this 22nd day of September 2011.


*s/ Edward F. Harold*
Edward F. Harold, T.A.
  La. Bar Roll No. 21672
Keith M. Pyburn, Jr.
  La. Bar Roll No. 10914
Timothy H. Scott
  La. Bar Roll No. 21373
Michelle I. Anderson
  La. Bar Roll No. 32090
Fisher & Phillips LLP
201 St. Charles Avenue, Suite 3710
New Orleans, LA  70170
Telephone: (504) 522-3303
Facsimile: (504) 529-3850
eharold@laborlawyers.com
kpyburn@laborlawyers.com
tscott@laborlawyers.com
manderson@laborlawyers.com

Ann Margaret Pointer (*pro hac vice* forthcoming)
  Georgia Bar No. 582750
Andria Lure Ryan (*pro hac vice* forthcoming)
  Georgia Bar No. 461495
Fisher & Phillips LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA  30309
Telephone:  (404) 231-1400
Facsimile:  (404) 240-4249
apointer@laborlawyers.com
aryan@laborlawyers.com

and

22

Leon R. Sequeira (*pro hac vice* forthcoming)
  Missouri Bar No. 52403
lsequeira@seyfarth.com
Seyfarth Shaw LLP
975 F. Street, N.W.
Washington, D.C. 20004-1454
Telephone: (202) 463-2400
Facsimile: (202) 828-5393

Attorneys  for Plaintiffs,
The Louisiana Forestry Association, Inc.,
Outdoor Amusement Business Association, Inc.,
Crawfish Processors Alliance, Inc.,
Forest Resources Association, Inc.,
American Hotel & Lodging Association, Inc.,
American Sugar Cane League of the U.S. A., Inc.

and

Edward T. Hayes
  La. Bar Roll No. 25700
Dean M. Arruebarrena
  La. Bar Roll No. 24283
Leake & Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Telephone: (504) 585-7775
Facsimile: (504) 585-7775
ehayes@leakeandersson.com
darruebarrena@leakeanderrson.com

 and

Philip E. Roberts
  La. Bar Roll No. 01130
Leake & Andersson, LLP
600 Jefferson Street, Suite 603
PO Drawer Z
Lafayette, LA 70502
Telephone: (337) 233-7430
Facsimile:  (337) 233-3403
proberts@leakeandersson.com

Attorneys for Plaintiff
American Shrimp Processors Association

23

## CERTIFICATE OF SERVICE

I certify that, on September 22, 2011, I electronically filed **PLAINTIFFS'**
**MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS MOTION TO**
**DISMISS OR ALTERNATIVELY TO TRANSFER VENUE**, with the Clerk of Court using
the CM/ECF system, which will automatically send e-mail notification of such filing to the
following attorneys of record:

> Geoffrey Forney
> Geoff.forney@usdoj.gov
>
> Katie Schwartzmann
> Katie.schwartzmann@splcenter.org
>
> Edward Tuddenham
> etudden@prismnet.com
>
> Arthur N. Read
> aread@friendsfw.org
>
> Mary Bauer
> Mary.bauer@splcenter.org
>
> Janice E. Hebert
> Janice.hebert@usdoj.gov
>
> John B. Rosenquest, IV
> jrosenquest@morganlewis.com

and on this same day I have also served this document on the following attorneys for Defendant

Intervenors via e-mail who are not set up to receive electronic filings from the Court:

> D. Michael Dale
> Michael@nwjp.org
>
> Silas M. Shawver
> silas@cdmigrante.org
>
> Clermont L. Fraser
> Clermont@ncjustice.org

/s/ Edward F. Harold
Edward F. Harold