
RECEIVED
DEC 13 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| THE LOUISIANA FORESTRY ASSOCIATION, INC., et al. | CIVIL ACTION NO. 11-1623 |
| -vs- | JUDGE DRELL |
| HILDA L. SOLIS, et al. | |
| COMITÉ DE APOYO LOS TRABAJADORES AGRÍCOLAS, et al. Defendant-Intervenors | MAGISTRATE JUDGE KIRK |

## RULING

Before us are two motions in the above captioned matter. The first is a "Motion for a Preliminary Injunction Before Friday, September 30, 2011" filed by Plaintiffs (Doc. 1). The second is a "Motion to Dismiss or Alternatively to Transfer Venue" (Doc. 14) filed by the Intervenors and joined by the Department of Labor ("DOL") (Doc. 65). For the following reasons, Intervenors' Motion to Transfer Venue will be **GRANTED**. Therefore Plaintiffs' Motion for Preliminary Injunction will be **DENIED**, but without prejudice to their right to reurge same in the proper court.

I. **Procedural Background**

This motion comes to us as the progeny of litigation in the Eastern District of Pennsylvania before U.S. District Judge Louis Pollak. Intervenors in the current

matter are organizations representing workers ("workers") who were plaintiffs in the suit in Pennsylvania against the DOL, among others, challenging wage rates under the H-2B visa program. In short, the H-2B program is an entirely federal program which provides visas for temporary, non-agricultural laborers from foreign countries to U.S. employers when domestic workers are unavailable. In an opinion dated August 30, 2010, Judge Pollak addressed several facets of the then existing H-2B regulations. Comité de Apoyo Los Trabajadores Agrícolas, et al. v. Solis, E.D. Pa. Doc. No. 80, 2010 WL 3431761 (E.D. Pa. 2010) ("CATA I").

In CATA I, plaintiffs had challenged the existing DOL regulations on the basis that they were both substantively and procedurally inadequate. As applied to the case pending before us, Judge Pollak initially remanded to the DOL (without vacating) the regulations concerning the methodology used for calculating the prevailing wage rate required to be paid to H-2B workers. CATA I, 2010 WL 3431761, at * 25 (Original ruling at p. 50). Specifically, Judge Pollak granted the DOL "120 days in which to promulgate new, valid regulations for determining the prevailing wage rate in the H-2B program." Id. Plaintiffs in the current matter ("employers") were not parties to the Pennsylvania suit.

In response to that opinion, the DOL promulgated the new rules and set January 1, 2012 as the effective date for the new prevailing wage rate. Wage Methodology for the Temporary Non-agricultural Employment H-2B Program, 76 Fed. Reg. 3,452 (Dep't of Labor Jan. 19, 2011). In a memorandum ruling and order on June 15, 2011, Judge Pollak invalidated the January 1, 2012 effective date because "1) it

2

was not subject to notice and comment, and 2) it was premised on a desire to alleviate employer hardship, in contravention of the INA" (Immigration and Naturalization Act, codified at Title 8 of the United States Code). <u>Comité de Apoyo Los Trabajadores Agrícolas, et al. v. Solis</u>, E.D. Pa. Doc. No. 119, 2011 WL 2414555, *5 (E.D. Pa. 2011) (Original ruling at p.10) ("CATA II"). The DOL then established a new effective date of September 30, 2011 for the updated prevailing wage rate. Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program; Amendment of Effective Date, 76 Fed. Reg. 45,667 (Dep't of Labor Aug. 1, 2011).

As a result, the employers filed a complaint in this Court on September 7, 2011 against, *inter alia*, the DOL seeking a temporary restraining order and preliminary injunction to prevent the new wage rate from taking effect September 30, 2011.[1] (Doc. 1). We denied the temporary restraining order on September 13, 2011. (Doc. 6). The workers permissibly intervened and filed the instant Motion to Dismiss or Alternatively to Transfer Venue. (Doc. 14). The DOL joined in this motion (Doc. 65) and the employers opposed. (Doc. 48). We allowed the filing of an *amicus curiae* brief for the United States Chamber of Commerce in support of the preliminary injunction. (Doc. 63). This Court heard oral arguments on both the present motion and the preliminary injunction on November 2, 2011. After careful consideration of the

---

[1] The effective date was extended to November 30, 2011 by Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program; Postponement of Effective Date, 76 Fed. Reg. 59,896 (Dep't of Labor Sept. 28, 2011) because of the current litigation. Additionally, on November 18, 2011 Congress passed, and the President signed, P.L. #112-55 which purported to arrest implementation of the wage rule until January 1, 2012. We are informed, but need not consider, that the DOL may be implementing anyway in possible defiant posture. That is an issue for another day.

arguments, pleadings, and exhibits in this matter, we analyze the situation as follows.

## II. Law and Analysis

### A. Legal Standards

#### 1. *Motion to Transfer*

28 U.S.C. § 1404(a) provides the statutory authority for transferring the case before us to the Eastern District of Pennsylvania. This statute provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Jurisdiction for the present suit is founded on the existence of a federal question under 28 U.S.C. § 1331. Accordingly, venue is proper in any district listed in 28 U.S.C. § 1391(b), including "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The DOL revised the H-2B wage rate as a direct result of the rulings and orders that took place in the litigation in the Eastern District of Pennsylvania; therefore venue of the present suit would be proper there.

The Fifth Circuit has announced that "he who seeks the transfer must show good cause." In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008) (citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963)). Good cause is shown "when the movant demonstrates that the transferee venue is clearly more convenient." In re Volkswagen, 545 F.3d at 315. The Fifth Circuit has adopted the private and public "Gilbert" factors "for the determination of whether a

§1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice." Id. (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)). Based on the jurisprudence, both convenience and the interest of justice must be satisfied. The private interest factors are:

> (1) the relative ease of access to sources of proof;
>
> (2) the availability of compulsory process to secure the attendance of witnesses;
>
> (3) the cost of attendance for willing witnesses; and
>
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

In re Volkswagen, 545 F.3d at 315 (internal quotations and citations omitted).

> The public interest factors are:
>
> (1) the administrative difficulties flowing from court congestion;
>
> (2) the local interest in having localized interests decided at home;
>
> (3) the familiarity of the forum with the law that will govern the case; and
>
> (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

Id. (internal quotations and citations omitted).

Finally, "although the *Gilbert* [sic] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and "'none . . . can be said to be of dispositive weight.'" Id. (citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004)). Although no single Gilbert factor controls the decision to

transfer, we see that the overwhelming public interest in comity may require a case to be transferred regardless of the circumstances surrounding the other factors.

    2.   *Principles of Comity*

Although not specifically listed as a factor under Gilbert, the Fifth Circuit has recognized comity as a sole basis for *requiring* courts to transfer a case to a court of concurrent jurisdiction due to the "likelihood of substantial overlap" between pending matters between the two courts. West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 730 (5th Cir. 1985) (citing Mann Manufacturing, Inc. v. Hortex Inc., 439 F.2d 403, 408 (5th Cir. 1971)). In West Gulf, the Fifth Circuit vacated a preliminary injunction issued by a district court in the Southern District of Texas based upon the following. West Gulf, 751 F.2d at 732.

ILA Deep Sea ("ILA") was a labor union which filed suit in the Southern District of New York on June 28, 1984 to enforce an arbitration agreement reached by the Emergency Hearing Panel ("Panel") on June 12, 1984. West Gulf, 751 F.2d at 724. The Panel's June 12th decision concerned the number of labor union members required to be employed when utilizing a "containerization" procedure for loading and unloading cargo. Id. at 723–24. ILA named West Gulf as a defendant in the New York action and West Gulf filed a motion to dismiss and motion to transfer, both of which were denied by New York's Judge Sand on August 9, 1984. Id. at 724.

While West Gulf's motions were pending in New York, it filed suit against ILA Local 24 in the Southern District of Texas on August 3, 1984 seeking a preliminary injunction and declaratory relief. Id. at 724–25. West Gulf filed suit in Texas alleging

ILA Local 24 members had refused to complete certain work assignments and that the assignments were in violation of the Panel's June 12th decision. Id. Thus, West Gulf sought to enjoin the workers from refusing to work. Id. at 725. The Texas judge issued the preliminary injunction against ILA Local 24 on August 13, 1984 which was a mere four days after the New York judge had denied West Gulf's motions to transfer and to dismiss. Id. at 725–26.

It is important to note that the national ILA union had filed suit against West Gulf in New York and West Gulf filed suit against the local chapter of the ILA in Texas, thus resulting in suits between different parties. West Gulf, 751 F.2d at 731, n.5. The suit in Texas concerned the enforcement of a local labor contract, but the enforcement of this contract was, like the New York suit, directly affected by the validity of the Panel's June 12th decision, and this was the matter pending before the New York judge. Id. The Fifth Circuit identified the following essentials facts guiding its ultimate decision in vacating the Texas preliminary injunction:

> (1) the New York action was filed over one month before the Texas action;
>
> (2) the New York action involved petitions to enforce and vacate the decision of the Emergency Hearing Panel and therefore concerned the validity of that decision;
>
> (3) the validity (or not) of the Emergency Hearing Panel decision was at the heart of West Gulf's entitlement to the declaratory and injunctive relief it requested in the Texas action;
>
> (4) the Emergency Hearing Panel sat in New York;
>
> (5) the containerization dispute before the panel affected the entire Atlantic and Gulf coasts; and

> (6) the New York judge considered and denied a motion to transfer the New York action to Texas four days before the issuance of the preliminary injunction in this case [in Texas].

Id. at 728. The West Gulf court cautioned against duplicative litigation, interference in the affairs of courts with coordinate jurisdiction, piecemeal resolution, and trenching upon the authority of sister courts. Id. at 729.

The Fifth Circuit referenced Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403 (5th Cir. 1971) in which that court had reversed a Texas court's entry of an injunction prohibiting a party in New York from pursuing an injunction application in New York. West Gulf, 751 F.2d at 730. Mann involved identical parties, but the New York suit and the Texas suit concerned infringement of two different patents arising from a single patent application. Mann, 439 F.2d at 406. Mann determined that the Texas court had erred in failing to dismiss the action or transfer it to New York where the litigation between the parties was first filed. Id. at 408. Although the suits were on two different patents, the Fifth Circuit found that "the record shows that the overall content of each suit, far from being capable of independent development, would likely overlap to a substantial degree." Id. at 407.

In commenting on Mann, the West Gulf court noted that "once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the court in Texas to resolve the question of whether both should be allowed to proceed." West Gulf, 751 F.2d at 730. As applied to the West Gulf facts, the Fifth Circuit noted: "Judge Sand [the New York judge] was in the better position to know what was needed, if anything, to preserve the status quo, as well as the likelihood of

the parties to prevail that underlies issuance or not of a preliminary injunction." Id. at 730–31. The Fifth Circuit rejected West Gulf's argument that the Texas suit against the ILA local chapter concerned a different issue than the issue pending in New York. The ultimate issue in both suits was the validity of the Panel's June 12th decision and the Fifth Circuit concluded that this should have been entirely handled by Judge Sand in New York.

The Fifth Circuit has consistently cited West Gulf and employed the "substantial overlap" standard for issues involving comity, and such issues are frequently addressed in Fifth Circuit jurisprudence under the "first to file rule." Cadle Co. v. Whataburger of Alice, Inc. 174 F.3d 599 (5th Cir. 1999). The Cadle court succinctly explained:

> Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. . . . Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court.

Id. at 603–04 (citations omitted). In Cadle, the Fifth Circuit determined that a judge in the Western District of Texas erred in dismissing, rather than transferring, a case alleging RICO violations when there existed "substantially similar issues" being litigated in bankruptcy court in the Southern District of Texas. Id. at 606. The ownership of Plaintiffs' claims in the Western District suit was at issue in both cases. Id. at 602.

9

Similarly, in <u>Save Power Ltd. v. Syntek Finance Corp.</u>, 121 F.3d 947 (5th Cir. 1997), the circuit court ruled a district court judge abused his discretion by denying a motion to transfer when the case in his court required the interpretation of terms of a subordination agreement that was also being litigated before another judge in the same district (Northern District of Texas). <u>Id.</u> at 952. In so ruling, the Fifth Circuit was especially alarmed at the likely resulting inconsistent rulings because of the failure to transfer the case. <u>Id.</u> at 951. Of particular importance to the current case, the Fifth Circuit referenced <u>West Gulf</u> for the proposition that "[c]omplete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action." <u>Id.</u> (citing <u>West Gulf</u>, 751 F.2d at 731, n.5). Notably, the plaintiffs in the <u>Save Power</u> case could have intervened in the first-filed action but withdrew such motion before it was ruled on.

The <u>Save Power</u> court also favorably cited the First Circuit's decision in <u>TPM Holdings, Inc. v. Intra-Gold Indus., Inc.</u> 91 F.3d 1 (1st Cir. 1996). In <u>TPM Holdings</u>, the First Circuit found that a New Hampshire federal court was not required to transfer a case concerning the validity of a lis pendens notice to a Texas federal court because the New Hampshire court was assessing the "*nature* of the claims being made, not their merit." <u>Id.</u> at 4 (emphasis in original). The <u>TPM Holdings</u> court noted that "[w]here the overlap between two suits is less than complete, the judgment [about transfer] is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." <u>Id.</u> at 4. Based on the factors present, the First Circuit

10

determined that the New Hampshire court's action "could not realistically be said to interfere with the Texas court's authority or conduct of its case." Id.

### B. Comity Requires Transfer of This Suit to Pennsylvania

The above precedential jurisprudence in this circuit requires that we transfer the present case to the Eastern District of Pennsylvania. We have serious concerns about issues placed before us in the merits, versus the decisions reached by the Pennsylvania court, which we will express *infra*, but comity dictates the transfer based on the "substantial overlap" in issues between our case and the case pending before Judge Pollak. Specifically, we find the employers' complaints about the manner of determining the prevailing wage rate directly result from Judge Pollak's orders to the DOL, and to rule either on injunctive relief or on the merits of this determination would constitute a "trenching" on the authority of our sister court as prohibited by the Fifth Circuit. West Gulf, 751 F.2d at 729.[2] We explain:

In his June 15, 2011 memorandum ruling, Judge Pollak detailed his reasons for vacating the January 1, 2012 effective date of the DOL's new wage rule as required by his order also issued on June 15, 2011. Judge Pollak cited two reasons for vacating the date: 1) the date was "not subject to notice and comment, and 2) it was premised on a desire to alleviate employer hardship, in contravention of the INA." CATA II, 2011 WL 2414555 at *5 (Original ruling at p. 10). The language of his memorandum

---

[2] We are aware of a recent ruling from another sister court in the Northern District of Florida may appear to be at odds with our conclusions here. We are given to appreciate that the issues in Bayou Lawn & Landscape Services, et al. v. Hilda Solis, et al., bearing number 3:11-cv-00445 on the docket of the United States District Court for the Northern District of Florida, Pensacola Division may be like the present litigation. We neither comment nor adopt nor reject any reasoning of that Court. We only follow Fifth Circuit precedent here.

11

ruling makes it clear that a consideration of employer hardship was a judicial finding for vacating the effective date and not merely dicta or offhand comment. The employers have suggested here that in his memorandum opinion Judge Pollak relied on the DOL's *concession* that employer hardship could not be considered in determining the substance of the wage rate, based on the language of the INA (codified at 8 U.S.C. § 1101(a)(15)(H)(ii)(b)), and NAACP v. Donovan, 566 F. Supp. 1202 (D.D.C. 1983). CATA II, 2011 WL 2414555 at *4 (Original ruling at p. 9). Judge Pollak was apparently unpersuaded by the DOL's argument that *not* considering employer hardship in determining the substance of the wage rate was a different situation from considering it in the implementation of the wage rate, i.e., creating a later effective date to ease the burden on employers was allowed under the law. Id. Judge Pollak also found the distinction between substance and implementation in this situation to be "illusory" given that a later effective date for the new higher wage would result in continued wages at a lower rate that was itself invalid. Id.

The record in the case leaves us with the inescapable observation that the DOL's refusal to consider employer hardship in determining the ultimate effective date for the revised wage rate in the wage rule at issue was a *direct* result of the June 15, 2011 Memorandum ruling and accompanying Order. Further, while not dispositive we note the DOL specifically represented it as such both in the Federal Register[3] and its pleadings before this court. See Defendant's Memorandum in

---

[3] "[P]ursuant to the district court's order, the Department cannot consider specific examples of employer hardship to delay the effective date of a new wage rule." Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program; Amendment of Effective Date, 76 Fed. Reg. 37,688 (Dep't of Labor June 28, 2011). *See also* Wage Methodology for the Temporary

Support of Transferring Venue (Doc. 65) at p. 7. It is clear from the record the DOL's current challenged wage rate was developed in direct response to orders from our sister court in Pennsylvania.

Based on Judge Pollak's rulings and the DOL's subsequent action, we would violate the principles of comity should we decide the issue of the propriety in incorporating employer hardship at this point. We may be sympathetic to the burden to be placed on employers by having to pay significantly increased wages with little to no advance warning by the DOL, but sympathy does not outweigh the "substantial overlap" that exists between our case and the one in Pennsylvania. We cannot interfere with the authority of Judge Pollak in his directions to the DOL for setting the wage rate.

III. <u>Concerns About the Pennsylvania Court Proceedings</u>

A. Consideration of Hardship to Employers

To begin, our search reveals no language in the INA (codified at Title 8 of the United States Code) that mandates employer hardship be left out as a consideration when setting the prevailing wage to be paid under the H-2B program. The employers have argued here that there is controlling jurisprudence from the Third Circuit *requiring* the DOL to consider hardship on employers in determining the prevailing wage rate under the H-2B visa program. In <u>Rogers v. Larson</u>, 563 F.2d 617 (3rd Cir.

---

Non-Agricultural Employment H-2B Program; Amendment of Effective Date, 76 Fed. Reg. 45,668 (Dep't of Labor Aug. 1, 2011) wherein the DOL stated: "Because the district court was clear that our consideration of hardship to employers when setting the January 1, 2012 effective date was contrary to our responsibilities under the INA to protect the wages and working conditions of U.S. workers, we cannot consider these comments in this rulemaking."

1977), the Third Circuit addressed whether statutes enacted in the U.S. Virgin Islands were preempted by federal law. The territorial statute required termination and replacement of nonresident workers with qualified resident workers. Id. at 619, n.1. The Third Circuit found that the purposes and objectives of the state statute conflicted with those of the Immigration and Nationality Act, and the statute was therefore preempted by the Supremacy Clause and the decision of the district court was reversed. Id. at 626–27. In so ruling, the appellate court examined the scheme of the 1977 version of the H-2 non-immigrant worker program.[4] The court opined that the dual purpose of the program was to "assure an adequate labor force on the one hand and to protect the jobs of citizens on the other." Id. at 625. The court further noted:

> Any statutory scheme with these two purposes must inevitably strike a balance between the two goals. Clearly, citizen-workers would be best protected and assured high wages if no aliens were allowed to enter. Conversely, elimination of all restrictions upon entry would most effectively provide employers with an ample labor force. The conflict arises because the Virgin Islands and the United States strike the balance between these two goals differently. . . . The federal provisions imply that one of the considerations behind the federal regulations is continuity of the work force. Therefore, an employer can expect that an alien-worker's stay will not be terminated under federal law until the date specified on the Labor Department's certification or, if the certification does not specify a date, for a period of one year. In addition to providing employers a reasonable expectation that there will not be frequent and disruptive turnovers in his work force due to Government action, the federal regulations provide aliens with an incentive to come to the United States; they know they will be able to work until the expiration of the certificate or for a period of at least one year.

---

[4] The 1977 version of the program did not appear to differentiate between "agricultural" and "non-agricultural" employment; thus, the program was not divided into H-2A and H-2B at the time. Rogers, 563 F.2d at 623–24.

Id. at 626. Clearly, the Third Circuit found employers' needs to be an important consideration in the INA's H-2 program.

The H-2 program discussed in Rogers was based on 8 C.F.R. 214.2, and this is the predecessor to the regulation which governs the current H-2B program. The Plaintiffs' historical perspective in this regard is detailed in brief. See Plaintiffs' Motion for Preliminary Injunction (Doc. 1), at p. 7.

There exists additional possibly persuasive jurisprudence appearing to address the issue. In Flecha v. Quiros, 567 F.2d 1154 (1st Cir. 1977), the First Circuit heard an appeal from the District of Puerto Rico on the issue of whether, because of their special demands, Puerto Rican workers were to be excluded from the pool of "available" domestic workers when determining the number of alien workers needed for certain migrant agricultural work. Id. at 1155. The First Circuit determined that "a worker who is not able and willing to enter into a contract of employment upon the U.S. conditions is not available within the statutory meaning when the U.S. Secretary is certifying the need for temporary foreign workers to the INS." Id. at 1157. The Flecha court cited the Rogers decision for the dual purposes of the guest worker program.

The Court of Appeals for the District of Columbia has tackled this issue and reached similar conclusions in AFL-CIO v. Dole, 923 F.2d 182 (D.C. Cir. 1991) and Orengo Caraballo v. Reich, 11 F.3d 186 (D.C. Cir. 1993). The Dole court found that the DOL submitted persuasive evidence to justify its choice of methodology in calculating the adverse effect wage rate ("AEWR"). Id. at 187–88. The D.C. Circuit upheld the

DOL's findings "that the USDA data series that it had been using to index the old AEWR would best serve statutory purposes as the AEWR." Id. at 186. Such purposes included the determination that the "use of the USDA average wage was thus the best option to accommodate the interests of both growers and farmworkers." Id. The Dole court also cited Rogers for the dual purposes proposition discussed above, i.e., "providing an adequate labor supply and protecting the jobs of domestic workers." Id. at 187.

In Orengo Caraballo, plaintiffs, including Comité de Apoyo Los Trabajadores Agrícolas ("CATA"), one of the intervenors in our suit, petitioned to require New York apple growers to provide travel benefits to the United States for H-2A workers. The D.C. Circuit affirmed the judgment of the district court and held that the growers were not required to provide advances to the workers for such travel. Orengo Caraballo, 11 F.3d at 198. In finding for the DOL, the Orengo Caraballo court considered the risk of losses incurred by the apple growers "from their former practice of advancing travel costs to distant workers, because many workers never completed the required work." Id. Interestingly, the Orengo Caraballo court rejected CATA's argument that the DOL impermissibly engaged in this "risk of loss" analysis. The court also cited Rogers for the double interests proposition: "to assure employers an adequate labor force on the one hand and to protect the jobs of citizens on the other." Id. at 190.

Unless we have missed something that occurred in Pennsylvania that is not part of the Court's opinions, we remain frankly baffled that the DOL apparently

16

ignored the foregoing authorities in its "throw in the towel" concession to Judge Pollack that employer concerns are not a proper issue for consideration in wage rule promulgation under H-2B. Because this employers' suit is being transferred to Pennsylvania, it appears to us that the above discussed jurisprudence may now be relevant to the discussion of the propriety of allowing the impact of employer hardship on the wage rate determination.

    B.    **Did the DOL possess the requisite rulemaking authority to promulgate the new wage rule?**

In his August 30, 2010 Opinion, Judge Pollak explained how the "INA provides the Attorney General with authority to issue regulations concerning the admission of H-2B workers to the United States." CATA I, 2010 WL 3431761 at *1 (Original ruling at p. 3). This authority was transferred to the Secretary of Homeland Security pursuant to the Homeland Security Act of 2002. Id. at *1, n.2 (Original ruling at p.3, n.2). Title 8 of the United States Code allows the Secretary of Homeland Security the discretion to delegate to the Secretary of Labor "any of the authority given to the Secretary of Homeland Security under subparagraph (A)(i)." 8 U.S.C. § 1184(c)(14)(B). Subparagraph (A)(i) concerns the Secretary of Homeland Security's authority to impose administrative remedies in the case of a "substantial failure to meet any of the conditions of the petition to admit or otherwise provide status to a nonimmigrant worker under section 1101(a)(15)(h)(ii)(b)." 8 U.S.C. § 1184(c)(14)(A)(I). The Code of Federal Regulations provides that the Secretary of Labor has authority to "establish procedures for administering the temporary labor certification program under his or her jurisdiction." 8 CFR § 214.2(h)(6)(iii)(D).

However, what we have seen of the Pennsylvania record does not identify any official act or declaration in which the Secretary of Homeland Security actually delegated this authority *to* the Secretary of Labor. Judge Pollak indicated that Homeland Security *may* delegate such authority, but our review produced nothing indicating that this actually took place. CATA I, 2010 WL 3431761 at *1, n.2 (Original ruling at p. 3, n.2). Furthermore, it appears, and could be, that the only authority which may be actually delegated is punishment for failure to comply with the rules, as opposed to the setting of actual wage rules.

In our Court, the employers posited that the DOL did not possess the authority to issue rules setting the wage rates at all under the H-2B program and such rulemaking would be therefore inherently invalid. We make no determination on this point of law as it apparently was not raised in Pennsylvania at all. Perhaps, had the employers been part of the CATA I Pennsylvania case, these unaddressed issues could have been resolved. While they may be viable issues, they likewise cannot be decided here, as to do so would violate the rules of comity and may well create inevitable turmoil as to exactly how the H-2B program must operate.

IV.  Conclusion

For the foregoing reasons, we find Fifth Circuit precedent and comity require we transfer this case to the Eastern District of Pennsylvania. Intervenors' and the DOL's "Motion to Dismiss or Alternatively to Transfer" (Doc. 14) will be **GRANTED** in part. The Motion to Dismiss will be **DENIED**.

Accordingly, Plaintiffs' "Motion for Preliminary Injunction" (Doc. 1) will be **DENIED**, but without prejudice to their right to reurge same in the proper court. All other pending motions will be **DENIED as moot.**

SIGNED on this 12th day of December, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE